IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUAN CARLOS BARRERA SIMON,<br><br>Petitioner,<br><br>v.<br><br>SAM OLSON, Field Office Director, Chicago Field Office, Immigration and Customs Enforcement, in his official capacity, *et al.*,<br><br>Respondents. | Case No. 25 C 14799<br><br>Honorable Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

U.S. Immigration and Customs Enforcement (ICE) is currently detaining Petitioner Juan Carlos Barrera Simon, a Mexican national, pending removal proceedings. ICE has denied Petitioner access to a bond hearing, and he petitions this Court to issue a writ of habeas corpus ordering Respondents to schedule a bond hearing or his immediate release from custody. Petitioner has been living in the United States for 23 years, with five children who are United States citizens, and has no criminal record. This case is similar to hundreds of cases across the country, and nearly all district judges have determined that the government's novel interpretation of the immigration detention statute is contrary to its plain language and inconsistent with binding precedent. This Court joins the chorus of decisions granting a bond hearing to a detainee who had previously been present and living in the United States—a right guaranteed by statute and the Constitution.

For the reasons discussed below, the petition for a writ of habeas corpus [1] is granted.

## Background

Petitioner, a citizen of Mexico, has been in the United States for over 23 years. [1] ¶¶ 2, 15. He has five U.S. citizen children and no criminal record. *Id.* ¶ 21. On December 5, 2025,

Petitioner was detained by Department of Homeland Security (DHS) in Wheeling, Illinois. *Id.* ¶¶ 2, 22. Petitioner was detained after leaving his family home on his way to work and without a valid arrest warrant. *Id.*

Petitioner filed the pending petition for habeas corpus on December 5, 2025. At the time the petition was filed, Petitioner was located at the Broadview Detention Center in Broadview, Illinois. *Id.* ¶ 1. On December 8, 2025, the Court issued an order setting a briefing schedule for the government's response to the petition and ordering the government not to remove Petitioner from the jurisdiction of the United States and not to transfer him to any federal judicial district other than those in the States of Illinois, Indiana, or Wisconsin. [4].

## Discussion

In his writ of habeas corpus, Petitioner brings two claims: (1) Violation of the Immigration and Nationality Act (INA) and (2) Violation of the Due Process Clause. The government challenges the Court's jurisdiction to hear the case as well as the validity of the substantive claims.

### I. Jurisdiction

A district court may grant a petitioner's request for a writ of habeas corpus if the petitioner demonstrates that he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). Respondents first argue that the Court lacks jurisdiction to hear this petition under several of the INA's jurisdiction stripping provisions: 8 U.S.C §§ 1252(g), 1252(b)(9), and 1252(a)(2)(B)(ii). [8] at 2–3. District courts across the country have almost uniformly concluded that none of these statutes strip the court of its jurisdiction, and this Court reaches the same conclusion. *See Sanchez v. Olson*, 2025 WL 3004580, at *2 (N.D. Ill. Oct. 27, 2025) (citing *Barrajas v. Noem*, 2025 WL 2717650, at *3 (S.D. Iowa Sept. 23, 2025)).

### a. 8 U.S.C. § 1252(g)

Respondents first point to Section 1252(g), arguing it strips this Court of jurisdiction to review the decision to detain the petitioner. [8] at 2–3; [8-1] at 13–14. That provision states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Because ICE detained Petitioner in connection with its intent to commence removal proceedings against him, Respondents claim their decision to detain him "arises from" their decision to commence those proceedings.[1] Section 1252(g)'s reach is narrow—"[o]nly challenges to the three listed decisions or actions . . . are insulated from judicial review." *E.F.L. v. Prim*, 986 F.3d 959, 964 (7th Cir. 2021).

Respondents' analysis is contrary to *Reno v. American-Arab Anti-Discrimination Committee*, where the Supreme Court held that Section 1252(g) did not apply to anything beyond those "three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" 525 U.S. 471, 482 (1999) (emphasis in original) (quoting § 1252(g)); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("We did not interpret [the language in Section 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves.").

Here, Petitioner does not challenge a decision to commence removal proceedings, adjudicate a case against him, or execute a removal order. Rather, he challenges the decision to

---

[1] Respondents rely on inapposite cases for this proposition, where individuals sought not habeas relief, as Petitioner does here, but rather damages claims under *Bivens*. *See* [8-1] at 14–15; *e.g.*, *Khorrami v. Rolince*, 493 F. Supp. 2d 1061, 1069 (N.D. Ill. 2007) (noting that petitioner "could have raised his challenges in a petition for habeas corpus"); *Sissoko v. Mukasey*, 509 F.3d 947, 949–50 (9th Cir. 2007) (explaining that an alternative avenue for remedying a false arrest would have been a habeas petition).

3

detain him. *See Carrera-Valdez v. Perryman*, 211 F.3d 1046, 1047 (7th Cir. 2000) (finding "nothing in § 1252(g) precludes review of the decision to confine" pending removal to another nation). Because the decision to detain him is not one of the three listed in Section 1252(g), this Court's ability to review it is not precluded by that section.

### b. 8 U.S.C. § 1252(b)(9)

Next, Respondents contend that Petitioner's habeas petition constitutes an impermissible collateral attack on his removal proceedings that triggers Section 1252(b)(9). Section 1252(b)(9) establishes the Court of Appeals as the exclusive forum for "judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken . . . to remove an alien from the United States." 8 U.S.C. § 1252(b)(9). Respondents contend that Petitioner is challenging the decision to detain him in the first place and that his detention arises from his removal proceedings and is thus insulated from judicial review by the district court. Respondents further contend that the detention cannot be reviewed until a final removal order is issued, and then only by a circuit court as Section 1252(a)(5) says that the only judicial review of a removal order is through a petition filed "with an appropriate court of appeals." [8-1] at 15–17. Respondents thus read these two provisions as working together to divert all claims relating to removal proceedings to a court of appeals post-removal order.

Here, Petitioner challenges the legality of his detention and the denial of his right to seek bond while his removal case proceeds—neither of which are actions arising from a decision to remove Petitioner from the United States. The Supreme Court has stated that Section 1252(b)(9) "does not present a jurisdictional bar" where petitioners "are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be

4

determined." *Jennings*, 583 U.S. at 294–95. Thus, Respondents are incorrect that Petitioner challenges the detention decision. [8] at 2–3. Instead, Petitioner claims that he is being unlawfully detained under the mandatory detention framework of Section 1225(b), as opposed to the discretionary one under Section 1226(a). As such, *Jennings* holds that Section 1252(b)(9) does not bar this Court from hearing this claim. Instead, the Supreme Court in *Jennings* observed that adopting this "extreme" interpretation of Section 1252(b)(9)—by "cramming judicial review of those questions into the review of final removal orders would be absurd." 583 U.S. at 293.

    c. **8 U.S.C. § 1252(a)(2)(B)(ii)**

Lastly, Respondents argue that 8 U.S.C. § 1252(a)(2)(B)(ii) strips this Court of jurisdiction. That provision precludes judicial review of "any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). But Petitioner's claims do not challenge a discretionary decision by the government to detain him instead of releasing him. Under Section 1225(b), detention is mandatory and not discretionary. Instead, by asserting that he is not subject to detention under Section 1225(b), Petitioner challenges the extent of Respondents' authority under the detention statute, which "is not a matter of discretion." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). Therefore, none of the jurisdiction-stripping provisions cited by Respondents apply to this case.[2]

---

[2] Respondents do not clearly state whether they adopt all of the arguments that the government made in the prior brief, which they attach as an exhibit, or only a subset that they list again—those relating to jurisdiction and the merits. *See* [8] at 1–2. Respondents thus have waived the exhaustion argument made in *H.G.V.U. v. Smith, et al.*, No. 25 C 10931 (N.D. Ill.), as exhaustion is a non-jurisdictional, affirmative defense, and thus is waivable. *See Del Raine v. Carlson*, 826 F.2d 698, 703 (7th Cir. 1987). But even if Respondents had expressly reiterated this argument, the Court would hold that it fails. First, "sound judicial discretion governs" whether exhaustion should be required. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). The refusal to conduct a bond hearing in this case flows largely from *In re Yajure Hurtado*, 29 I. & N. Dec. 216, so "appealing to the BIA would have been futile because the BIA had predetermined the statutory issue." *Gonzalez*, 355 F.3d at 1019 (cleaned up); *see also Ochoa Ochoa*, 2025 WL 2938779, at *2

II.     **Basis for Detention**

Immigration detention is governed by two statutory sections: 8 U.S.C. §§ 1225 and 1226. Section 1225 "authorizes the Government to detain certain aliens seeking admission into the country," while Section 1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings," including noncitizens "who were inadmissible at the time of entry." *Jennings*, 583 U.S. at 288–89. Petitioner insists that his detention should be analyzed under Section 1226(a). Respondents contend that Section 1225(b)(2) governs Petitioner's detention because he is (1) an "applicant for admission" (2) who is "seeking admission" and (3) is detained for a removal proceeding. [8-1] at 23–26.

Section 1226(a) sets the "default rule" for the discretionary detention of noncitizens "already present in the United States." *Jennings*, 583 U.S. at 303. Under § 1226(a), immigration authorities may make an initial determination as to detention, but noncitizens may then request a bond hearing before an immigration judge. 8 C.F.R. §§ 1236.1(c)(8), (d)(1). At the bond hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d); *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006)).

---

n.4. Futility is a sound reason to refrain from requiring exhaustion. Respondents also do not make, and the brief from *H.G.V.U.* does not include, a ripeness argument, although the government has made such an argument in other similar cases. *See* [8]; [8-1]. However, even if Respondents were to make a ripeness argument, the Court would reject it. "[A] case is ripe if it is 'not dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Wickstrom v. Air Line Pilots Ass'n, Int'l*, 156 F.4th 835, 840 (7th Cir. 2025) (quoting *Trump v. New York*, 592 U.S. 125, 131 (2020) (per curiam)) (cleaned up). Here, the alleged harm—detention in violation of the INA and the Due Process Clause of the Fifth Amendment—has already happened. Because Petitioner alleges that he is currently detained because of the government's actions, the parties' dispute is "concrete, not abstract," and the case is ripe for review. *Id.* at *3. To the extent Respondents' arguments are being raised and they are not addressed here, the Court agrees and incorporates the reasoning discussed in *Jesus Corona Diaz v. Samuel Olson, et al.*, 2025 WL 3022170, at *2–3 (N.D. Ill. Oct. 29, 2025), for finding that Petitioner need not exhaust his remedies through the immigration courts and that the case is ripe.

By contrast, Section 1225 governs the detention of those "seeking admission." An applicant for admission is defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States," and "fall[s] into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings*, 583 U.S. at 287; 8 U.S.C. § 1225(a)(1). "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Jennings*, 583 U.S. at 287. The second category creates a "catchall provision" for mandatory detention "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for [full removal proceedings under Section 1229]." *Id.*; 8 U.S.C. § 1225(b)(2)(A). Unlike noncitizens detained under Section 1226(a), those detained under Section 1225 may only be released "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)). While this language seems broad, the *Jennings* Court went on to explicitly state that "§ 1226 applies to aliens already present in the United States." *Id.* at 303.

Despite the clear language in *Jennings*, Respondents assert that all foreign nationals in the United States are "applicants for admission" regardless of their proximity to the border, the length of time that they have been present here, or whether they ever had the subjective intent to properly apply for admission. [8-1] at 23–24. Also, they argue that foreign nationals are "seeking admission" no matter how long they have been present in the United States as long as they have "not agreed to depart" or conceded their removability. *Id.* at 24–25. Essentially, Respondents' position is that a noncitizen seeks admission by default; thus, unless he tries to leave the United States, the noncitizen is seeking admission.

7

The Seventh Circuit recently weighed in on the question of whether Section 1225 or Section 1226 applies in cases like this one, where a noncitizen is arrested in the Midwest rather than at the border. In *Castanon-Nava v. U.S. Dep't of Homeland Sec.*,[3] DHS and ICE argued, as Respondents do here, that they were detaining the plaintiffs under the mandatory detention provided in Section 1225(b)(2)(A). ___ F. 4th ___, 2025 WL 3552514, at *8 (7th Cir. Dec. 11, 2025). But the Seventh Circuit rejected that argument and instead found that Section 1226(a) applies to noncitizens discovered within the country. In reviewing the language of the relevant statutes Section "1225(a)(1) defines an 'applicant for admission' as 'an alien present in the United States who has not been admitted or who arrives in the United States.'" *Id.* at *9 (quoting 8 U.S.C. § 1225(a)(1)). Thus "while a noncitizen arrested in the Midwest might qualify as 'an alien present in the United States who had not been admitted,' § 1225(a)(1), the mandatory detention provision upon which Defendants rely, limits its scope to an 'applicant for admission' who is 'seeking admission,' § 1225(b)(2)(A)." *Id.* at *9. In other words, "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Id.* (quoting *Jennings*, 583 U.S. at

---

[3] In *Castanon-Nava*, DHS and ICE had entered into a Consent Decree in 2022 with a class of plaintiffs over their alleged practice of warrantless arrest of individuals, absent probable cause that the subjects were likely to escape before warrants could be obtained, in violation of 8 U.S.C. § 1357(a)(2). 2025 WL 3552514, at *1. Relevant to the issues here, in 2025, before the expiration of the Consent Decree, the plaintiffs sought an extension and modification of the decree, asserting ICE arrested individuals in violation of the Consent Decree. *Id.* at *2. On October 7, 2025, the district court granted the motion in part and ordered the Consent Decree to remain in effect until February 2, 2026. *Id.* at *3. Then on October 20, 2025, the plaintiffs filed a motion for placement of potential class members on alternatives to detention, in response to the defendants' request for a two-month extension to produce certain documents to plaintiffs. *Id.* As part of their opposition to this motion, defendants argued that these individuals were detained pursuant to ICE's authority under Section 1225(b)(2)(A). *Id.* On November 13, 2025, the district court order the release of the individuals detained under Section 1225(b)(2)(A) and plaintiffs' broader request for the release of individuals who "potentially fell into the class" given the number of instances where the class's rights were violated. *Id.* at *4. Defendants filed an emergency motion to stay both the October 7 and the November 13 orders.

289) (alterations in original). Therefore, the Seventh Circuit found, that on the facts in the record, ICE and DHS were "not likely to succeed on the merits of their argument that those individuals, whom ICE arrested in Chicago without a warrant, are subject to mandatory detention under § 1225(b)(2)(A)." *Id.*

The Seventh Circuit further rejected the argument that "an 'applicant for admission' is synonymous with a person 'seeking admission' because, as they put it, one cannot apply for something without also seeking it." *Id.* While noting that this argument has some "superficial appeal" it is "Congress's prerogative to define a term however it wishes, and it has chosen to limit the definition of an 'applicant for admission' to 'an alien present in the United States who has not been admitted or who arrives in the United States.'" *Id.* (quoting 8 U.S.C. § 1225(a)(1)). Further, the government's "construction would render § 1225(b)(2)(A)'s use of the phrase 'seeking admission' superfluous, violating one of the cardinal rules of statutory construction." *Id.* (citing *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023)). As the Supreme Court instructs "if an interpretation of one provision 'would render another provision superfluous, courts presume that interpretation is incorrect.'" *Id.* (quoting *Bilski v. Kappos*, 561 U.S. 593, 607–08 (2010)).

Moreover, the Seventh Circuit recognized that "the difference in treatment between a noncitizen at the border and one already in the United States fits within the broader context of our immigration law." *Id.* Noting that "[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Id.* (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)).[4] Therefore, the Seventh Circuit found that

---

[4] The Seventh Circuit further stated that it did "not escape our notice that Defendants' recent reliance on § 1225(b)(2)(A) to detain noncitizens discovered within the United States upends decades of practice." *Id.* at n.13.

the defendants were not likely to succeed on the merits of the argument that individuals detained by ICE and arrested without a warrant are subject to mandatory detention under Section 1225(b)(2)(A). *Id.* at *10.

Petitioner has been in the United States for over 23 years. [1] ¶ 2. He has five U.S. citizen children and no criminal record. *Id.* ¶ 21. Like the plaintiffs in *Castanon-Nava* he is far beyond "seeking" admission into the United States and was detained in the Midwest. Therefore, Section 1226(a) applies to him and he is entitled to a bond hearing.

To overcome both the plain language of the statute and binding precedent,[5] Respondents rely on *Matter of Yajure Hurtado*, a decision issued by the Board of Immigration Appeals (BIA) on September 5, 2025. [8] at 2; [8-1] at 29–30. There, the BIA reversed course as to its longstanding interpretation of the INA and held that "Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission." 29 I&N Dec. 216 (BIA 2025). The Court rejects the BIA's interpretation in *Yajure Hurtado*, and notes that it is neither binding on nor persuasive to this Court. *See Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 400 (2024) (agencies have "no special competence" in statutory interpretation and federal courts have an "obligation to independently interpret" statutes). The Court also recognizes that *Yajure Hurtado* is at odds with "longstanding agency practice of providing § 1226(a) bond hearings to noncitizens like [Petitioner.]" *Ochoa Ochoa v. Noem*, 2025 WL 2938779, at *7 (N.D. Ill. Oct. 16, 2025); *see Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 490 (S.D.N.Y. 2025) (discussing the longstanding practice of applying Section 1226(a) to noncitizens already in the country). Thus, while *Yajure Hurtado* is not binding, this Court may instead look to longstanding agency practice to inform its understanding of the relevant statutes.

---

[5] Respondents do not address the Seventh Circuit's decision in *Castanon-Nava* in their response brief. [8].

*Loper Bright*, 603 U.S. at 386. Further, courts in this district[6] have soundly rejected the BIA's new interpretation of Section 1225(b) and applied Section 1226(a) in similar factual circumstances. Thus, under Seventh Circuit precedent and in agreement with almost every district court to have considered the issue, the Court finds that the "statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice" all lead to the same conclusion: Section 1226(a), not Section 1225(b)(2), applies to situations like Petitioner's where ICE detains a noncitizen already residing in the United States. *See Sanchez v. Olson*, 2025 WL 3004580, at *3–4 (N.D. Ill. Oct. 27, 2025) (collecting cases).

### III. Due Process

Having concluded that Petitioner's detention is discretionary and not mandatory, the Court turns to whether it violates due process. The Due Process Clause of the Fifth Amendment applies to noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process Clause]

---

[6] *See, e.g.*, *Miguel v. Noem*, 2025 WL 2976480, at *4–7 (N.D. Ill. Oct. 21, 2025) (Alonso, J.); *H.G.V.U. v. Smith*, 2025 WL 2962610, at *4–5 (N.D. Ill. Oct. 20, 2025) (Coleman, J.); *Ochoa Ochoa v. Noem*, 2025 WL 2938779, at *4–7 (N.D. Ill. Oct. 16, 2025) (Jenkins, J.); *G.Z.T. v. Smith*, No. 25 C 12802, Dkt. 14 (N.D. Ill. Oct. 21, 2025) (Ellis, J.); *Cortes v. Olsen*, 2025 WL 3063636, at *4 (N.D. Ill. Nov. 3, 2025) (Kennelly, J.); *Maldonado v. Crowley*, No. 25 C 12762, Dkt. 16 (N.D. Ill. Oct. 24, 2025) (Daniel, J.); *Patel v. Crowley*, 2025 WL 2996787, at *4–8 (N.D. Ill. Oct. 24, 2025) (Cummings, J.); *Perez v. Noem*, 2025 WL 3140692, at *3–4 (N.D. Ill. Nov. 10, 2025) (Kendall, J.); *Diaz v. Olson*, 2025 WL 3022170, at *3–6 (N.D. Ill. Oct. 29, 2025) (Shah, J.); *Guartazaca Sumba v. Crowley*, 2025 WL 3126512, at *3–5 (N.D. Ill. Nov. 9, 2025) (Chang, J.); *Rios v. Noem*, 2025 WL 3124173, at *2–3 (N.D. Ill. Nov. 7, 2025) (Rowland, J.); *Arizmendi v. Noem*, 2025 WL 3089107, at *3–5 (N.D. Ill. Nov. 5, 2025) (Pallmeyer, J.); *Flores v. Olson*, 2025 WL 3063540, at *3 (N.D. Ill. Nov. 3, 2025) (Gettleman, J.); *D.E.C.T. v. Noem*, 2025 WL 3063650, at *4–5 (N.D. Ill. Nov. 3, 2025) (Tharp, J.).

protects." *Zadvydas*, 533 U.S. at 690. Government detention in immigration proceedings may violate that Clause unless "in certain special and narrow nonpunitive circumstances . . . where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (cleaned up). Courts apply a three-factor balancing test to determine whether a violation of procedural due process has occurred: (1) the private interest implicated by the government action; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Respondents rely on *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), to support their argument that Petitioner has limited due process rights. [8-1] at 19–23. In *Thuraissigiam*, the Supreme Court held that a petitioner who was still "at the threshold of initial entry," though technically in the country, could still be treated as "an alien seeking initial entry." 591 U.S. at 107, 114, 139 (holding that a noncitizen detained "within 25 yards of the border" is treated as if stopped at the border and had not acquired due process protections). However, contrary to Respondents' arguments, *Thuraissigiam* held only that noncitizens detained close to the border "shortly after unlawful entry" have not yet "effected an entry." *Id.* at 140; *see also Shaughnessy v. United States*, 345 U.S. 206, 212 (1953) (explaining that noncitizens "on the threshold of initial entry stand[ ] on a different footing" than those who have "passed through our gates"). *Thuraissigiam* presents a scenario distinguishable from the one before the Court, where Petitioner has been in this country for decades and was arrested while on his way to work. [1] ¶¶ 20, 22. Further, in *Thuraissigiam*, the Supreme Court explicitly distinguished long-present

noncitizens, noting that its earlier holding in *I.N.S. v. St. Cyr*, 533 U.S. 289 (2001), the habeas "writ could be invoked by aliens already in the country who were held in custody pending deportation." *Thuraissigiam*, 591 U.S. at 137. So even Respondents' best support acknowledges that long-time resident noncitizens, such as Petitioner, sit in an altogether different category than those seeking admission in the more literal sense.

Here, Petitioner has been in the United States for over 23 years and therefore was "already in the country." *See Jennings*, 583 U.S. at 289; [1] ¶ 2. The Fifth Amendment's "Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. Thus, Petitioner is entitled to Due Process protections.

Applying the three-part balancing test set forth in *Mathews*, Petitioner's detention without a bond hearing violates procedural due process. First, Petitioner has a cognizable private interest in being freed from unlawful detention through a bond hearing. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests—the interest in being free from physical detention by [the] government."). Second, there is a severe risk of erroneous deprivation based on the factual record and the fact that without a hearing, an immigration judge is unable to determine whether the requirements are met for detention. This is further emphasized by the fact that Respondents have put forward no evidence in this proceeding that Petitioner is a flight risk or a danger to his community, particularly when he has not been for the past 23 years. And third, the government's interest is slight insofar as Petitioner was detained without an individualized custody determination that evaluated dangerousness and flight risk or any articulated change in circumstances. As other courts have concluded in factually similar cases, Petitioner's detention without a bond hearing amounts to a due process violation. *See, e.g.*, *Ochoa Ochoa*, 2025 WL

13

2938779, at *7; *Miguel*, 2025 WL 2976480, at *7; *Sanchez*, 2025 WL 3004580, at *4; *Perez*, 2025 WL 3140692, at *4–5.

### IV. Scope of Relief

Petitioner requests immediate release from custody or, alternatively, an individualized bond hearing. The latter is appropriate here, as the procedural due process violation arises from his detention under Section 1226(a) without a bond hearing, rather than the detention itself. At Petitioner's bond hearing before the immigration judge, the government bears the burden to prove by clear and convincing evidence that the detainee poses a danger or flight risk. *See Ochoa*, 2025 WL 2938779, at *8 (collecting cases placing the burden on the government by an "overwhelming consensus").

### Conclusion

For these reasons, the Petition for Writ of Habeas Corpus [1] is granted. Petitioner's detention without an individualized custody determination violates the INA and the Due Process Clause of the Fifth Amendment. Within five days of the issuance of this Opinion, Respondents are ordered to either: (1) afford Petitioner a bond hearing before an Immigration Judge under 8 U.S.C. § 1226(a), at which the Government shall bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Petitioner's continued detention; or (2) release Petitioner from custody, under reasonable conditions of supervision.

The Court's prior Order stands that, so long as Petitioner is in custody, he is not to be removed from the jurisdiction of the United States and shall not be transferred to any judicial district outside the states of Illinois, Wisconsin, and Indiana. If, in the event Petitioner is transferred to another facility or other location, Respondents must notify the Court and Petitioner's counsel at least 72 hours prior to the transfer.

14

**SO ORDERED.**

Dated: December 13, 2025

_____
Sunil R. Harjani
United States District Judge